IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ASHLEY AUSBURN and<br>KIMBERLY HENDERSON,<br>Individually and on behalf of<br>all other similarly situated<br>current and former employees,<br><br>    Plaintiffs,<br><br>v.<br><br>YMCA OF MEMPHIS & THE<br>MID-SOUTH,<br>A Tennessee Nonprofit<br>Corporation, FLSA Opt-In<br>Collective Action,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 15-02695 |

**ORDER**

Plaintiffs Ashley Ausburn and Kimberly Henderson, individually and on behalf of all other similarly situated current and former employees of Defendant YMCA of Memphis & the Mid-South, bring this collective action against Defendant for minimum wage and overtime violations under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, et seq., and for violations of Tennessee law. (1st Am. Compl., ECF No. 33 at 1.)

Before the Court is Plaintiffs' July 20, 2016 "Renewed Motion for Approval of 29 U.S.C. § 216(b) Notice and Consent

Forms and to Order Disclosure of Current and Former Employees (Conditional Certification)" (the "Motion"). (ECF No. 38.) In their Motion, Plaintiffs seek an order (1) authorizing this action to proceed as an opt-in collective action against Defendant; (2) directing Defendant to immediately provide to Plaintiffs' counsel a computer-readable file containing the names, last known physical addresses, last known email addresses, social security numbers, dates of employment, and last known telephone numbers of all non-exempt, hourly-paid employees who worked for Defendant within the six years preceding the filing of this action (the "Putative Class Members"); (3) requiring a Court-approved notice to be posted at all of Defendant's YMCAs, enclosed with all of Defendant's current hourly-paid employees' next regularly scheduled paychecks or stubs, and mailed and emailed to all Putative Class Members; (4) tolling the statute of limitations for the Putative Class, except for those who have opted in to this action; and (5) deeming any consent forms submitted by Putative Class Members who subsequently opt in to be filed on the date they are postmarked. (Mot. Memo, ECF No. 38-1 at 1-2.) Defendant responded on September 16, 2016. (Resp., ECF No. 40.) Plaintiffs replied on October 10, 2016.[1] (Reply, ECF No. 47.)

---

[1] Plaintiffs filed an identical Reply on September 29, 2016, (ECF No. 45), before the Court's Order Granting Plaintiffs' Motion for Leave to File Reply. (ECF No. 46).

For the following reasons, the Motion is DENIED.

## I.    Background

In their Amended Complaint, Plaintiffs allege that they and Putative Class Members, at times, (a) were not paid an overtime rate for work in excess of 40 hours a week and (b) performed uncompensated "off-the-clock" work "to such an extent that it reduced their hourly rate of pay below the minimum wage." (Am. Compl., ECF No. 33 ¶¶ 10-11.) Plaintiffs allege that Plaintiffs' and Putative Class Members' un- or undercompensated off-the-clock work occurred "before, during and after their regularly scheduled hours" and consisted of "'prep' time, mandatory meetings/training time, picking up and delivering supplies time, travel time from one YMCA location to another, etc." (Id. ¶¶ 12-14.) Plaintiffs allege that Defendant required Plaintiffs and Putative Class Members to work off-the-clock during unpaid 30-minute meal periods due to Defendant's "centralized and controlled 'meal break deduction policy'" and that Defendant failed to ensure meal periods were uninterrupted and duty-free. (Id. ¶¶ 15-17.)

Plaintiffs allege that Defendant knew Plaintiffs and Putative Class Members performed inadequately-compensated off-the-clock work and "had a common plan, policy and practice of requiring and forcing" them to perform that work. (Id. ¶¶ 18-21.) Plaintiffs allege that they have complained to Defendant

3

about being required to perform off-the-clock work, but that
Defendant has not "properly heeded, acknowledged or adequately
addressed" their complaints. (Id. ¶ 22.) Plaintiffs allege
that Defendant "failed to accurately record actual hours worked"
by Plaintiffs and Putative Class Members and "willfully edited
out hours they worked in excess of forty (40) per week." (Id. ¶
25-26.) Plaintiffs allege that Defendant "knew that its common
plan, policy and practice . . . would require its supervisors
and managers to work Plaintiffs and [putative] class members"
off-the-clock "as an implicit condition of continuing
employment." (Id. ¶ 34.)

Plaintiffs allege that, as a result of Defendant's conduct,
Plaintiffs have suffered "lost minimum wages, overtime
compensation and other damages." (Id. ¶ 35.) Plaintiffs allege
that, due to its "scheme to save payroll costs and payroll
taxes," Defendant "has enjoyed ill gained profits at the
expense" of Plaintiffs and Putative Class Members. (Id. ¶ 23.)

To support their Motion, Plaintiffs submit six declarations
by Plaintiff Ausburn and several former hourly employees who
have opted in to this action. In Plaintiff Ausburn's
declaration, she states that she worked for Defendant as an
hourly-paid employee from June 2007 to August 2014. (ECF No.
38-4 ¶¶ 1-2.) She states that she "worked off the clock before,
during and after [her] shifts without being paid at least the

4

minimum wage rate of $7.25 per hour." (Id. ¶ 3.) She states
that she "observed other hourly paid employees of the YMCA
working off the clock without being paid at least the minimum
wage of $7.25 per hour." (Id. ¶ 4.) She states that she "was
required to work during [her] unpaid lunch break, without being
fully relieved of [her] duties, and without being clocked in to
YMCA's time keeping system." (Id. ¶ 5.) She states that she
"observed" other hourly-paid employees working during their
lunch breaks "without being clocked in to YMCA's time keeping
system." (Id. ¶ 6.) She states that she "was required to
attend" mandatory meetings and training "off the clock without
being paid for such training time" and that she "observed" other
hourly-paid employees "attending" such meetings "off the clock
without being paid for such time." (Id. ¶¶ 7-10.)

Five other declarations by former hourly employees track
Ausburn's statement almost verbatim. (See ECF Nos. 38-5, 38-6.)
One declarant, Guinda Guy, adds that she "worked in childcare in
the nursery, as an after school counselor and as a summer camp
counselor," at the Fogelman YMCA and the Frayser after-school
care program. (ECF No. 38-5 at 1.) Another declarant, Donna
Holmes-Ross, states that she worked at Defendant's Millington
and Cordova facilities. (ECF No. 38-6 ¶ 1.)

Holmes-Ross states that she "also observed the Childcare
Director, Carrie Cullum, over all Millington YMCA before and

after care programs, . . . manually edit non-exempt hourly employees' recorded time so they would be considered part time and not receive all of their straight time and overtime compensation for working over forty (40) hours because of labor budgeting policies set by the YMCA Executive Office." (Id. ¶ 11.) Holmes-Ross states that she "also observed Brian McLaughlin, Branch Manager for the Cordova YMCA, manually edit non-exempt hourly employees' recorded time that worked over forty (40) hours in particular workweeks because of labor budgeting policies set by the YMCA Executive Office." (Id. ¶ 12.) Holmes-Ross adds that McLaughlin "told [her] that the reason he edited employees' time was because managers are not allowed to pay employees for overtime because if they did YMCA would be over-budget per Keith Johnson of the YMCA Executive Office." (Id. ¶ 13.)

## II.  Jurisdiction

Plaintiffs allege violations of the FLSA.  The Court has federal question jurisdiction under 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because they derive from a "common nucleus of operative fact."  See 28 U.S.C. § 1367; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

## III. Standard of Review

The FLSA permits employees to recover unpaid compensation by suing an employer "in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action."  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

Although collective actions under the FLSA must be certified, courts do so using a framework distinct from the class certification criteria under Federal Rule of Civil Procedure 23.  Monroe v. FTS USA, LLC, 815 F.3d 1000, 1008-09 (6th Cir. 2016) (discussing O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016)).  To determine whether putative class members are employees "similarly situated" to the lead plaintiffs, courts generally make a two-stage inquiry.  See Comer, 454 F.3d at 546.  "The first takes place at the beginning of discovery.  The second occurs after all of the opt-in forms have been received and discovery has concluded."  Id. (quotation marks omitted).  Under this framework:

> At the notice stage, conditional certification may be
> given along with judicial authorization to notify
> similarly situated employees of the action.  Once

7

discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated.

Monroe, 815 F.3d at 1008 (citation omitted).

Although courts apply a "fairly lenient standard" at the first stage, Comer, 454 F.3d at 547 (quotation marks omitted), "[t]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs," O'Brien, 575 F.3d at 584. Courts may consider the pleadings and any affidavits or declarations filed by the lead plaintiffs. See Keenum v. Lott Enters., No. 2:14-cv-02504-JPM-tmp, 2014 WL 11369832, at *2 (W.D. Tenn. Nov. 25, 2014). Although the lead "plaintiff[s] must show only that [their] position is similar, not identical, to the positions held by the putative class members," the lead plaintiffs must at least make a "modest factual showing" that the putative class members are similarly situated. See Comer, 454 F.3d at 546-47 (quotation marks omitted). "The prevailing practice is to require plaintiffs to establish through evidence at least a colorable basis for their claim that the putative class of similarly situated plaintiffs exist[s]." Tyler v. Taco Bell Corp., No. 2:15-cv-02084-JPM-cgc, 2016 WL 2344229, at *5 (W.D. Tenn. May 3, 2016) (quotation and internal quotation marks omitted).

"At this stage the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Brasfield v. Source Broadband Servs., LLC, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). The Court may disregard plaintiffs' factual assertions that are not based on personal knowledge. See Tyler, 2016 WL 2344229, at *5 ("Plaintiff's own testimony does not demonstrate that other AGMs were also misclassified. In her deposition, Plaintiff repeatedly stated that she had no personal knowledge about the duties performed by any other AGM . . . . Thus, while Plaintiff's testimony . . . supports her claim that she, individually, may have been misclassified, it has no bearing on her claim that other AGMs were also misclassified and, accordingly, were similarly situated."); Saddler v. Memphis City Schs., No. 2:12-cv-02232-JTF-tmp, 2013 WL 12100721, at *2 (W.D. Tenn. Mar. 3, 2013) ("As long as the affidavit is based upon the plaintiff's personal knowledge, the defendant cannot object to the inadmissibility of the plaintiff's affidavit."). A "modest factual showing" requires more than conclusory allegations lacking sufficient detail. See Arnold v. Reliant Bank, No. 3:11-cv-1083, 2012 U.S. Dist. LEXIS 108223, at *7 (M.D. Tenn. Aug. 2, 2012) ("In sum, the plaintiff's declaration lacks sufficient detail to meet even the fairly lenient standard for conditional certification that courts apply in this circuit.");

Lacy v. Reddy Elec. Co., No. 3:11-cv-52, 2011 WL 6149842, at *4
(S.D. Ohio Dec. 9, 2011) ("If the Court were looking at only the
Amended Complaint and Plaintiffs' declarations, the Court would
very likely overrule Plaintiffs' Motion for Conditional
Certification.    Those documents contain nothing more than
conclusory allegations that other Reddy employees are similarly
situated.    Specific allegations concerning those other employees
are sorely lacking.").

    "Ultimately, the decision of whether the court facilitates
court-supervised notice remains within the discretion of the
district court."    Thompson v. RGT Mgmt., Inc., No. 2:11-cv-
02573-AJT-dkv, 2012 WL 3261059, at *3 (W.D. Tenn. June 8, 2012)
(quotation marks omitted), adopted by, No. 11-02573, 2012 WL
3260431 (W.D. Tenn. Aug. 8, 2012).    "Whether potential opt-in
plaintiffs are similarly situated is a factual determination
made by the court on a case-by-case basis."    Frye v. Baptist
Mem'l Hosp., Inc., No. 07-2708, 2008 WL 6653632, at *6 (W.D.
Tenn. Sept. 16, 2008).    Given the "fairly lenient standard" at
the first stage, the court's determination "typically results in
conditional certification of a representative class."    Comer,
454 F.3d at 547 (quotation and internal quotation marks
omitted).    But "[c]ourts have a duty to avoid the stirring up of
litigation through unwarranted solicitation, and the court
should also ensure that employers are not unduly burdened by

frivolous fishing expeditions at this stage." Thompson, 2012 WL 3261059, at *2. Thus, "the district court has the discretion to determine what is an 'appropriate case' for conditional certification." Monroe v. FTS USA, LLC, 257 F.R.D. 634, 637 (W.D. Tenn. 2009) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)).

## IV. Analysis

### A. Conditional Certification of FLSA Collective Action

Plaintiffs contend that, based on the Amended Complaint and the declarations, they have adequately alleged that Defendant had a common plan, policy and practice of requiring hourly-paid employees to perform off-the-clock work and to willfully edit the records of employees who worked in excess of 40 hours a week to avoid paying them overtime, in violation of the FLSA. (Mot. Memo, ECF No. 38-1 at 9.) Plaintiffs argue that their claims and the claims of Putative Class Members are unified by common theories of Defendant's FLSA violations and that certification is warranted because Plaintiffs and Putative Class Members are similarly situated under O'Brien. (Id. at 13.) Defendant responds that Plaintiffs have failed to articulate any illegal policy or plan that applies to the Putative Class as a whole. (Resp, ECF No. 40 at 1.) Defendant argues that the declarations are vague and fail to support the few specific allegations made in the Amended Complaint. (Id. at 1-2.)

11

Although the Amended Complaint clearly articulates Plaintiff's legal theories, it relies on generalized, conclusory allegations of FLSA violations. It contains almost no supporting facts. For example, Plaintiffs allege that Defendant required employees to work off-the-clock during unpaid 30-minute meal periods based on a "centralized and controlled 'meal break deduction policy,'" and that Defendant willfully edited out hours for employees who worked in excess of 40 hours a week. The Amended Complaint provides no context for or details about how Defendant's alleged policies were implemented or enforced. Although the Amended Complaint frequently alleges claims of "Plaintiffs and class members," (see Am. Compl., ECF No. 33 ¶¶ 10, 12-21, 23-25, 27-32, 34-35), those claims are for hourly employees in the abstract, rather than for any specific employees. The Amended Complaint provides no factual detail about how Plaintiffs Ausburn and Henderson specifically are similarly situated to Putative Class Members.[2]

The declarations also lack factual detail. As illustrated by Plaintiff Ausburn's declaration, the declarations contain

---

[2] Citing Belcher v. Shoney's, Inc., 927 F. Supp. 249, 251 (M.D. Tenn. 1996), Plaintiffs argue that some courts have looked to the complaint alone when determining whether putative class members are similarly situated to lead plaintiffs, without requiring lead plaintiffs to proffer affidavits or declarations providing factual support. (Mot. Memo, ECF No. 38-1 at 12-13.) Because the Amended Complaint is factually deficient, Belcher does not help Plaintiffs. In Belcher, the court did not resolve whether plaintiffs could support a conditional certification motion based on the pleadings alone, or whether it also needed affidavits or declarations, because the court found that plaintiffs had made a sufficient showing using either approach. 927 F. Supp. At 251.

conclusory allegations of FLSA violations, but provide no context for the alleged violations. At most, they establish that the declarants individually may have been victims of FLSA violations, but not that other Putative Class Members are similarly situated. For example, although Ausburn states that she "was required to work during [her] unpaid lunch break" and that she "observed" other hourly-paid employees working during their unpaid lunch breaks, she does not assert that Defendant required the other hourly-paid employees to work during their unpaid lunches. (See ECF No. 38-4 ¶¶ 5-6.) Plaintiff Ausburn's declaration also provides no detail about who the other employees were, how she knew they were working off-the-clock, or whether they were doing so for an impermissible reason, such as because Defendant, through its managers and supervisors, unlawfully required them to work off-the-clock. The declarants' assertions about other hourly employees lack factual detail and are not supported by personal knowledge. See Tyler, 2016 WL 2344229, at *5; Saddler, 2013 WL 12100721, at *2; Arnold, 2012 U.S. Dist. LEXIS 108223, at *7; Lacy, 2011 WL 6149842, at *4.

The declarations contain almost no factual detail about the declarants themselves, further inhibiting any factual comparison between Plaintiffs and Putative Class Members. Except for Holmes-Ross, who specifies the locations where she worked and the managers she observed, and Guy, who specifies the locations

13

where she worked and the nature of her job duties, the
declarations provide no factual detail about the declarants' job
titles or duties, where they worked, how they were managed or
paid, which manager or supervisor required them to work off-the-
clock or edited their hours, or any other factual circumstances
of the alleged violations.  There is no such information about
Plaintiffs.

When there is no basis to conclude that Plaintiffs or
declarants have personal knowledge that all of an employer's
employees are similarly situated, courts in this Circuit
frequently limit class certification to employees who performed
job duties or worked at locations similar to the lead
plaintiffs'.

For example, in <u>Taylor v. Pilot Corp.</u>, No. 14-cv-2294-SHL-
tmp, 2015 WL 12001270, at *6 (W.D. Tenn. June 16, 2015),
<u>reconsideration denied</u>, No. 14-cv-2294-SHL-tmp, 2016 WL 4524310
(W.D. Tenn. Mar. 3, 2016), the court conditionally certified a
class of employees in an FLSA collective action, but noted the
defendants' "legitimate argument that the nebulous description
of the class [was] potentially too broad."  The court explained:

> [Plaintiffs' proposed class] is so ill-defined as to
> be inclusive of nearly every non-exempt employee to
> have been employed by Pilot within the time period
> alleged.  Nor have Plaintiffs demonstrated that
> employees who worked in capacities outside of the
> specified three are similarly situated to Ms. Taylor.
> The Court will therefore limit conditional

14

certification only to Pilot's employees who worked as hourly cashiers, team leaders or shift leaders.

Id.  See also, e.g., Stewart v. Flowers Foods, Inc., No. 15-cv-1162-JDB-egb, 2016 WL 5122041, at * 4 (W.D. Tenn. Aug. 12, 2016) ("[T]he Magistrate Judge cannot find that the evidence submitted by Plaintiffs justifies certification of a nationwide class, as there are no affidavits submitted or personal knowledge beyond the Tennessee warehouses."), adopted by, No. 15-1162, 2016 WL 5118309 (W.D. Tenn. Sept. 20, 2016); Keenum, 2014 WL 11369832, at *4 ("Plaintiff has not made any factual showing, however, that other types of technicians, or technicians paid on different pay schemes, were paid in violation of the FLSA."); Motley v. W.M. Barr & Co., No. 1:12-cv-02447-JDB-egb, 2013 WL 1966442, at *7 (W.D. Tenn. May 10, 2013) ("[T]he facts presented are sufficient only to extend class certification to those who were employed in the same warehouse as the three Plaintiffs. The declarations fail to provide any inference or assertion that Motley, Watkins, or Caldwell discussed the meal break situation with co-workers outside of the warehouse or were given an opportunity to observe these violations in another location."); Elberger v. Univ. of Tenn. Health Sci. Ctr. Coll. of Med., No. 12-2755-JTF/dkv, 2013 WL 12049105, at *7 (W.D. Tenn. Oct. 7, 2013) ("[O]f the twenty-five separate departments within the UTHSC at Memphis, the Court finds that Plaintiff's collective

action should be limited to female Assistant Professors,
Associate Professors, and Full Professors employed during the
last three (3) years within those departments specifically
referenced in her Amended Complaint . . . .").

Because the declarants generally omit factual detail about
their job duties and where they worked, the Court cannot
determine whether they were all childcare employees, like Guy,
or whether they worked in similar locations under managers who
were representative of system-wide work policies and practices.
Additional factual detail that declarants are capable of
providing could reveal that Plaintiffs' proposed class of all
non-exempt hourly paid employees is too broad.  The detail
provided is insufficient for the Court to certify a more limited
class.  The Court should not reward conclusory allegations and
overgeneralization with class certification where Plaintiffs'
facts fail to establish that Plaintiffs' broad class
certification request is warranted.

Although, at the conditional-certification stage, courts do
not typically consider the merits of claims, resolve factual
disputes, or decide substantive issues, see, e.g., Brasfield,
257 F.R.D. at 642, Plaintiffs concede that their declarations
must show "that there is a reasonable basis for Plaintiffs'
claims." (Mot. Memo, ECF No. 38-1 at 3, 8.) Plaintiffs cite a
number of cases from federal district courts in Tennessee where

the courts have conditionally certified FLSA collective actions. Those decisions emphasize that a modest factual showing requires more than vague, conclusory allegations. (Id. at 2-3.)

In Bradford v. Logan's Roadhouse, Inc., 137 F. Supp. 3d 1064, 1067, 1072-73, 1081 (M.D. Tenn. 2015), the court conditionally certified a nationwide class of restaurant employees where it found "the evidentiary weight" of 100 declarations submitted by Logan's Roadhouse, Inc. ("LRI") employees "to be significant."  The court explained:

> The declarations are of additional evidentiary importance as to the 'similarly-situated' requirement because they are from declarants working in LRI restaurants in sixteen of the twenty states (i.e., eighty percent) in which LRI operates restaurants, further supporting the argument that the LRI Violations are the result of widespread LRI corporate policies or practices that affect all potential class members.

Id. at 1073.  The court found that the declarations were supported by personal knowledge and showed such details as:

> (1) employment with LRI; (2) the job title for which certification is sought; (3) performance of similar job duties under the job title regardless of the LRI restaurant at which they worked; (4) payment of wages; (5) work performed (a) for no wage, (b) for below the minimum wage, and/or (c) in excess of forty hours per week without overtime compensation by LRI; (6) job duties and requirements that do not meet the requirements of any exemptions to the FLSA.

Id. at 1073-75.

In Carter v. Jackson-Madison Cnty. Hosp. Dist., No. 1:10-cv-01155-JDB-egb, 2011 WL 1256625, at *16 (W.D. Tenn. Mar. 31,

17

2011), the court conditionally certified an FLSA collective action where it found that "the factually-detailed complaint, affidavit and consent form of the named plaintiff, and affidavits and consent forms of two additional employees of the Defendant [were] sufficient to make a 'modest factual showing' that [the plaintiff was] similarly situated to prospective class members." In addition to alleging an FLSA violation, the plaintiff's factually-detailed affidavit provided evidence about (a) the nature of plaintiff's job duties, (b) the facility where plaintiff worked, (c) how employee work hours were recorded, (d) how the employer's company-wide "Meal Break Deduction Policy" worked, (e) the specific reasons plaintiff and fellow employees were compelled to work during unpaid meal breaks (including that the employer had never trained its employees on what constituted a compensable meal break under the FLSA and that the workload and minimal staffing made daily meal breaks unrealistic), (f) management's awareness of the problem and willingness to permit and expect employees to work during unpaid meal breaks, (g) the kind of tasks employees were expected to perform during unpaid meal breaks, and (h) plaintiff's complaints and efforts to inform management about the problem. Id. at *14-16.

In Garrett v. Sitel Operating Corp., No. 10-cv-2900-STA-cgc, 2011 WL 5827240, at *1-2 (W.D. Tenn. Nov. 18, 2011), the court conditionally certified an FLSA collective action for

18

unpaid overtime wages where the complaint and declarations by twelve employees alleged (a) the employees' uniform job duties, (b) the specific "preliminary and postliminary" job-related tasks the employees were expected to perform while off the clock, (c) approximately how long these off-the-clock tasks took to complete each day, (d) how the computerized time-recording system the employer used was programmed so that these "preliminary and postliminary" tasks would not be recorded as compensated work, and (e) supervisors' orders that employees perform these uncompensated tasks. The court found that the plaintiffs and declarants "presented a common theory: the requirement to perform preliminary and postliminary tasks, such as booting up and shutting down computers, off the clock and without compensation." Id. at *5.

The factually-detailed pleadings, affidavits, and declarations on which courts based conditional certifications in these cases contrast with the factually deficient Amended Complaint and declarations in this case. Here, the filings do not rise to the modest factual showing required by courts in this Circuit.

Plaintiffs rely heavily on O'Brien, in which the Sixth Circuit stated:

> We do not purport to create comprehensive criteria for informing the similarly-situated analysis. But in this case, the plaintiffs were similarly situated,

19

> because their claims were unified by common theories
> of defendants' statutory violations, even if the
> proofs of these theories are inevitably individualized
> and distinct.    The claims were unified so, because
> plaintiffs articulated two common means by which they
> were allegedly cheated: forcing employees to work off
> the clock and improperly editing time-sheets.    We do
> not mean to require that all collective actions under
> § 216(b) be unified by common theories of defendants'
> statutory violations; however, this is one situation
> where a group of employees is similarly situated.

575 F.3d at 585.    Plaintiffs emphasize the conclusion that

claims can be "unified by common theories of defendants'

statutory violations, even if the proofs of these theories are

inevitably individualized and distinct."    (Mot. Memo, ECF No.

38-1 at 12 (quoting O'Brien, 575 F.3d at 585).)    Plaintiffs

argue that "employment situations, job titles, locations or

claims of the notified employees do not need to be the same" so

long as all employees were subject to the employer's plan,

policy and practice.    (Id. at 10.)    Plaintiffs argue that,

because they have articulated two unifying theories of

Defendant's unlawful pay practices, the same two theories in

O'Brien, they have demonstrated that they and the Putative Class

Members are similarly situated.    Plaintiffs conclude that

conditional certification is warranted.    (Id. at 13.)

Nothing in O'Brien undermines the "modest factual showing"

standard articulated in Comer.    The O'Brien court reviewed a

motion to decertify an FLSA collective action following

discovery.    575 F.3d at 583.    At no point does O'Brien cite

Comer or discuss the "modest factual showing" standard that
plaintiffs must meet at the conditional certification stage.  As
demonstrated by the cases discussed above, courts in this
Circuit post-O'Brien decline to conditionally certify FLSA
collective actions, or conditionally certify collective actions
of limited scope, when Comer's "modest factual showing" standard
has not been met.

Taylor is illustrative.  The court explained that "at the
notice stage, a determination that plaintiffs are similarly
situated does not depend on the similarities of their job
titles, descriptions or duties, but rather if they suffered from
a 'single, FLSA-violating policy, and when proof of that policy
or of conduct in conformity with that policy proves a violation
as to all the plaintiffs.'"  Taylor, 2015 WL 12001270, at *4
(quoting O'Brien, 575 F.3d at 585).  The court agreed that
"disparate factual and employment settings of the individual
plaintiffs should be considered at the second stage of
analysis."  Id. (quoting White v. MPW Indus. Servs., Inc., 236
F.R.D. 363, 373 (E.D. Tenn. 2006)).  The Taylor court found,
however, that plaintiffs' proposed class was "so ill-defined as
to be inclusive of nearly every non-exempt employee to have been
employed by" the employer and that plaintiffs had not
demonstrated that employees who worked in capacities different
from the lead plaintiff and the affiants were similarly

situated.   Id. at *6.   The court conditionally certified a
limited class of employees whose titles and job duties matched
the plaintiffs'.   Id.

As Taylor and other decisions demonstrate, under the
"modest factual showing" standard, factual detail about such
particulars as Plaintiffs' and declarants' job titles, duties,
or specific work settings is relevant at the conditional
certification stage, not because the Court must weigh proof of
Plaintiffs' legal theories as to individual employees, but
because the Court must determine whether Plaintiffs are
similarly situated to Putative Class Members.   If Plaintiffs and
declarants are not similarly situated to all non-exempt hourly
employees employed by Defendant, Plaintiffs' allegations of
common theories of liability are not sufficient.   Because
Plaintiffs and declarants omit factual detail about their
specific employment situations, it is impossible to determine
whether Plaintiffs' theories of liability extend to other
employees with different job titles and duties or to employees
who worked at other locations in Defendant's YMCA system.

Holmes-Ross's declaration provides some support for the
theory that Defendant had a policy, promulgated by the YMCA
Executive Office, of editing recorded hours of employees who had
worked in excess of 40 hours a week to avoid paying overtime
wages.   Her statements are not enough to support conditional

certification given how factually deficient the Amended Complaint and the other declarations are. None of the declarants asserts that she personally was a victim of the editing. That further demonstrates that Plaintiffs have failed to make the modest factual showing that they and Putative Class Members are similarly situated.

The Court DENIES Plaintiffs' request for conditional certification of their FLSA collective action.

**B.    Conditional Certification of State Law Claims**

Plaintiffs seek to conditionally certify their state law claims collectively, using the FLSA's notice and opt-in procedures. (Mot. Memo, ECF No. 38-1 at 14.) They argue that "Plaintiffs, who are similarly situated in accordance with the O'Brien standard because their claims are unified by common theories of defendants' statutory violations . . . should be permitted to seek both FLSA and state supplemental remedies stemming from each common theory shared by Plaintiffs." (Id. at 16.)

Plaintiffs cite no authority for the proposition that a court may conditionally certify state law claims as a collective action where conditional certification of an FLSA collective action is not warranted. Just as it is impossible to determine whether Plaintiffs' FLSA-based theories of liability extend to other employees throughout Defendant's YMCA system, it is

impossible to determine whether Plaintiffs' state law-based theories of liability extend to other employees. Plaintiffs' request for conditional certification of their state law claims is DENIED.[3] See Monroe, 257 F.R.D. at 637.

## V.   Conclusion

For the foregoing reasons, Plaintiffs' request for conditional certification is DENIED. Plaintiffs' remaining requests, which follow from conditional certification, including requested disclosure, Court-approved notice, tolling of the statute of limitations for the Putative Class, and recognition of filing dates for the Putative Class, are DENIED. Plaintiffs' Motion is DENIED.


So ordered this 12th day of December, 2016.


                              /s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE

---

[3] Defendant asks that Plaintiffs' state law claims be dismissed. (Resp., ECF No. 40 at 27.)  Defendant argues that, "[w]here there is no federal class claim, there can be no pendant state claims." (Id.)  Defendant contends that, "[l]acking federal collective jurisdiction, this court should decline to entertain Plaintiffs['] state law claims." (Id. at 28.)  Defendant cites no authority for these propositions.  Defendant only opposes conditional certification of Plaintiffs' FLSA collective action.  Defendant has not moved to dismiss Plaintiffs' FLSA claims.  Although the Court denies Plaintiffs' request for conditional certification of their FLSA collective action and consequently denies their request for conditional certification of their state law claims, it does not follow that the Court has lost jurisdiction over Plaintiffs' federal or state claims.  Defendant's request that Plaintiffs' state law claims be dismissed is DENIED.